# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY C. BATTEN, | Case No.  1:23-cv-00890-FRS (BAM) (PC) |
| Plaintiff, | SCREENING ORDER FINDING PLAINTIFF MAY PROCEED ON COGNIZABLE CLAIMS |
| v. | |
| CLENDENIN, et al., | (ECF No. 1) |
| Defendants. | |

Plaintiff Wesley C. Batten ("Plaintiff") is a civil detainee appearing pro se and informa pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Individuals detained pursuant to California Welfare and Institutions Code § 6600 *et seq.* are civil detainees are not prisoners within the meaning of the Prison Litigation Reform Act.  *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).  Plaintiff's complaint, filed on June 12, 2023, is before the Court for screening. (ECF No. 1.)

## I.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.      Plaintiff's Allegations**

Plaintiff is currently housed at Coalinga State Hospital in Coalinga, California, where the complaint are alleged to have occurred.  Plaintiff names as defendants: (1) Stephanie Clendenin, Director of the Department of State Hospitals ("DSH"); (2) Brandon Price, Executive Director of the Department of State Hospitals Coalinga ("DSH-C"); (3) Dr. Cory Fulton, Chief Psychologist, DSH-C; (4) Dr. Scott Van de Putte, Senior Psychologist Supervisor, DSH-C; and (5) Frank Maul, Chief of Rehab Therapy, DSH-C.  All defendants are sued in their official capacities only.

Plaintiff alleges that he is held under the Sexually Violent Predator Act ("SVPA") as a civil detainee patient of DSH-C.  Plaintiff is a participant in the Sex Offender Treatment Program ("SOTP").  SOTP includes adjunct groups clinically recommended in treatment plans.

All SOTP groups are psychotherapy groups, and DSH-C clinical staff have repeatedly stressed that the primary facilitator be licensed and trained to perform psychotherapy.  The co-facilitator must be in the process of getting their license.  These facilitator requirements are also consistent with the State of California's Business and Professions Code and the Board of

2

Psychology relating to the licensure and practice of the delivery of psychotherapy services to individuals or groups in exempt settings.  It is also consistent with California Code of Regulations Title 22, which requires that a licensed acute mental health facility like DSH-C, shall employ a psychologist, licensed to practice psychology, and if they are not licensed then they must be directly supervised by a person with a license to practice psychology.  The former status quo and pattern and practice at DSH-C was that for every SOTP core module group and adjunct group, there would be one licensed Psychologist who was the lead and the co-facilitator would either be a licensed clinical social worker or a behavioral specialist.  Adjunct groups would be assigned the same way, except if the group focused on leisure, then a Rehab Therapist ("RT") would be the lead.

A Behavioral Specialist ("BS") is not licensed to practice psychology and is directly supervised by a Program Director, who is a Psychiatric Technician ("PT") licensed to be employed as a PT. RTs are not licensed and are supervised by individual RT Program Directors and answer to Defendant Maul, the Chief of Rehab Therapy.

Plaintiff has been made aware that on or about August 2022, DSH-C had employed over 42 licensed psychologists.  As of the date of Plaintiff's complaint, there were less than 12 to provide psychotherapy services for approximately 1,350 mental health patients.  Plaintiff asserts that Defendants have violated the constitution and directly harmed Plaintiff by permitting Rehab Therapists and Behavioral Specialists to deliver sex offender specific treatment to Plaintiff and to facilitate and co-facilitate SOTP groups, substantially departing from generally accepted professional standards of care.

Plaintiff has been harmed by Defendants' acts and omissions in continuing this unlawful practice, as he has questioned which treatment groups to enroll in given the limited psychologists facilitating SOTP at the facility, Plaintiff's facilitators have not been able to discuss or interpret Plaintiff's alleged mental disorder, are not permitted to discuss symptom maintenance, address topics such as institutional remission, and have diverted these subjects stating they are not qualified to talk about it.  Plaintiff has been provided treatment over the years with no clinical continuity.  The RTs and BSs fail to properly document and update Plaintiff's treatment plans,

3

and there are no psychologists to directly supervise them in treatment teams. Defendants permit RTs and BSs to document interdisciplinary psychology notes in relation to Plaintiff's treatment group progress and they are permitted to document in Plaintiff's medical record without training, education, or supervision, to interpret Plaintiff's progress and mental status, and to interpret the Diagnostic and Statistical Manual ("DSM") used by licensed psychologists to diagnose and treat persons with mental health disorders. Defendants permit RTs and BSs to determine if Plaintiff is ready to advance to further modules of the SOTP and offer their "professional" clinical interpretation of Plaintiff's progress, harming Plaintiff because courts have often excluded testimony of non-psychological staff treating sex offenders and have deemed them not qualified as an expert witness or trained professionals in the field of treating sexual abusers.

Defendants have abdicated their responsibility to ensure the facility is properly staffed and that treatment team services are consistent and in compliance with state law. Plaintiff is harmed by Defendants' acts and omissions because treatment interventions were delayed, interfered with, and only exacerbated the risks of insufficient mental health programming due to lack of staff. Plaintiff is harmed because of Defendants' failure to provide a sufficient number of clinical psychologists, resulting in unlawfully stalling enrollment in treatment, treatment teams, and caused Plaintiff's treatment plan to be outdated.

Plaintiff alleges that each defendant is responsible for Plaintiff's harm, and knew or should have known that the facility's staffing methodology substantially departed from generally accepted professional standards of care. Plaintiff alleges that Defendants' acts and omissions violated Plaintiff's due process rights under the Fourteenth Amendment by subjecting Plaintiff to punishment, because the condition of Plaintiff's confinement is more restrictive than inmates in county jails and prisons. Defendants did not fail to properly staff DSH-C unit 21, which holds CDCR inmates, providing them with psychologists to meet their treatment group and treatment team needs, monthly treatment teams with fully licensed psychologists, and treatment group facilitators who were licensed psychologists, unlike what was afforded to Plaintiff.

Plaintiff seeks injunctive relief.

///

4

**III.    Fourteenth Amendment – Due Process**

Plaintiff alleges that Defendants failed to appropriately staff the SOTP with licensed psychologists, leading to Plaintiff's delayed and unqualified treatment.

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1261 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995) (quoting *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989).  States are required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," and to provide "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citations omitted). Although the state enjoys wide latitude in developing treatment regimens, the courts may take action when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all. *Id.*  A person committed based on mental incapacity has a due process right to receive "such individual treatment as will give [him] a realistic opportunity to be cured or to improve his . . . mental condition . . . because, absent treatment, [he] could be held indefinitely as a result of [his] mental illness." *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980) (internal citations omitted).

Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than convicted defendants, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012) (citing *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991), abrogated on other grounds by 511 U.S. 825 (1994).  But the conditions under which civil detainees are held cannot be harsher than

5

those under which prisoners are detained except where the statute itself creates a relevant difference. *Hydrick*, 500 F.3d at 989 n.7.

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for which the individual is committed. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.'" *Valdez v. Rosenbalm*, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. *Id.*; *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004) ("due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purposes for which persons are committed.")

Liberally construing the allegations, Plaintiff states a cognizable claim for failure to treat Plaintiff under the Fourteenth Amendment Due Process clause, which requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. Taking Plaintiff's factual allegations as true, Defendants have failed to provide fully licensed psychologists to facilitate Plaintiff's SOTP groups, as required by law and generally accepted professional standards, while fully staffing treatment teams for CDCR inmates with licensed psychologists.

To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted),

abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).  Absent properly licensed psychologists to facilitate and supervise Plaintiff's treatment, Plaintiff is left without an opportunity to cure or improve his mental illness and no prospect of ever being released.  These facts constitute injury stemming from Defendants' alleged policy of failure to properly staff the SOTP.

**IV.    Conclusion and Order**

Based on the foregoing, the Court finds that Plaintiff has stated a cognizable claim against Defendants Clendenin, Price, Fulton, Van de Putte, and Maul for failure to treat Plaintiff under the Fourteenth Amendment Due Process Clause due to their policy.

Accordingly, it is HEREBY ORDERED as follows:

1.  This action shall proceed on Plaintiff's complaint, filed on June 12, 2023, (ECF No. 1), against Defendants Clendenin, Price, Fulton, Van de Putte, and Maul for failure to treat Plaintiff under the Fourteenth Amendment Due Process Clause due to their policy; and

2.  A separate order will issue regarding service of the complaint.

IT IS SO ORDERED.

Dated:    **February 3, 2026**        /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE